IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.

**M. P., a minor, by and through his parents and next friends, JARED P.,** and **SARAH P.,**

Plaintiffs,

v.

**POUDRE SCHOOL DISTRICT R-1,**
**TERRENCE JONES, Town of Timnath Chief of Police, in his official capacity,**
**ANDREW TOPE, Town of Timnath Deputy Police Officer and School Resource Officer, in his individual capacity,**
**GABRIELA PONCE, Town of Timnath Deputy Police Officer and School Resource Officer, in her individual capacity,**

Defendants.

_____

**COMPLAINT AND JURY DEMAND**
_____

Plaintiff, M. P., a minor, by and through his parents and next friends, Jared P. and Sarah P., through counsel Spies, Powers & Robinson, P.C., respectfully alleges for his Complaint and Jury Demand as follows:

**INTRODUCTION**

1. On January 28, 2020, two officers in police uniforms while "on foot patrol" in the halls of Bethke Elementary School entered the room, uninvited, where M.P., an eleven year-old boy with disabilities, was working with school staff and aggressively forced him to the ground and placed him in handcuffs. The officers then physically carried M.P. out of the school building and placed him in their police car while M.P. struggled and cried in pain.

2. That morning, M.P. had gone to his general education classroom before checking in

with the school counselor. While being escorted by his teacher to go see the counselor, M.P. took off his jacket and began swinging it around. Officer Tope, who was outside the classroom, viewed this as being threatening to the teacher and grabbed M.P. by the shoulders and carried him downstairs and placed him in to a separate room. This violent physical seizure by Officer Tope caused M.P. to escalate and defend himself.

3. M.P.'s teachers were able to calm M.P. down with the officers Ponce out of the room. M.P.'s mother was called. Due to his disability-related challenges, M.P. went through periods of calm and then periods of escalation, to which M.P.'s teachers would implement the behavior support strategies set forth in M.P.'s behavior intervention plan.

4. Not being trained or experienced in responding to the behavioral challenges of a child like M.P. with disabilities, the officers rushed into the room unannounced and uninvited and violently forced M.P. to the ground and placed him in handcuffs. Both officers than carried M.P. out of the school building as he was writhing and crying in pain, and placed him in the back of their patrol car.

5. M.P. has suffered physically and emotionally as a result of Defendants' violation of his rights.

## JURISDICTION AND VENUE

6. This action arises under the Constitution and laws of the United States, pursuant to 42 U.S.C. § 1983; the Americans with Disabilities Act, 42 U.S.C. § 12131; and the Rehabilitation Act, 29 U.S.C. § 794. This Court has jurisdiction pursuant to 28 U.S.C. § 1331.

7. Venue is proper pursuant to 28 U.S.C. § 1391. All parties reside within the District of Colorado, and the events described in this Complaint occurred in the District of Colorado.

**PARTIES**

8. Plaintiff M.P. is a minor child who, at the time of the incident, was an eleven-year-old student at Bethke Elementary School, a public school in the Poudre School District R-1. Jared P. and Sarah P. are the parents of M.P. Plaintiff M.P. and his parents and next friends, Jared P. and Sarah P., are residents within the Poudre School District.

9. Defendant Poudre School District R-1 ("School District") is a political subdivision of the state of Colorado.

10. At all times relevant to this Complaint, Defendant Terrence Jones was the Chief of Police for the Timnath Police Department ("Police Chief"). He had final policymaking authority for the Timnath Police Department ("Timnath Police Department"). The Police Chief is the official responsible for ensuring that the Timnath Police Department and its employees comply with the Constitution, as well as federal and state law. He is sued in his official capacity.

11. At all times relevant to this Complaint, Defendant Andrew Tope ("SRO Tope" or "Tope") was a School Resource Officer ("SRO") and a police officer with the Timnath Police Department, jointly employed by the Poudre School District R-1.

12. At all times relevant to this Complaint, Defendant Gabriela Ponce ("SRO Ponce" or "Ponce") was an SRO and a police officer with the Timnath Police Department, jointly employed by the Poudre School District R-1.

13. At all times relevant to this Complaint, Defendants were acting or failing to act under color of state law.

**FACTUAL ALLEGATIONS**

14. At the time of the incident described in this Complaint, M.P. was an eleven-year old

boy and a fifth-grade student at Bethke Elementary School.

15. M.P. was identified as an intellectually gifted student with a full scale IQ in the 99th percentile. M.P. excelled academically in math and science, was friendly, compassionate to those needing help, and loved animals.

16. M.P. also had been diagnosed with an emotional disability and attention-deficit/hyperactivity disorder ("ADHD").

17. As a result of his disabilities, M.P. sometimes had difficulty managing his response to frustration, expressing emotions, wants, and needs, and handling some transitions.

18. M.P. is an individual with disabilities within the meaning of Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794(a), and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq.

19. In a recent school year, 8.1% of enrolled students in Bethke Elementary School, and 12.3% of students in the Poudre School District more generally, have been students with disabilities.[1]

20. On January 28, 2020, M.P. was told by school staff to stay in a separate classroom and not to return to his regular education classroom.

21. Without permission, M.P. left this separate room and returned to his regular classroom where he refused to leave.

22. SRO Tope and SRO Ponce, who were on "foot patrol" in the halls of Bethke Elementary School were told by Principal Alfonso that M.P. was supposed to check in with his counselor in the morning but had refused and instead had gone to his classroom.

---

[1] Civil Rights Data Collection, Bethke Elementary School, https://ocrdata.ed.gov/profile/9/school/531100/summary; Civil Rights Data Collection, Poudre School District, https://ocrdata.ed.gov/profile/9/district/27855/summary.

23. Principal Alfonso told SRO Tope and SRO Ponce to go to the stairwell at the rear of the building to make sure M.P. did not try to leave the building as one of M.P.'s disability-related behaviors was to try and escape from challenging situations.

24. SRO Ponce descended the stairs and stood by the exit door while SRO Tope, contrary to Principal Alfonso's instructions, remained outside M.P.'s classroom.

25. SRO Tope saw M.P.'s teacher, Courtney Hill, leave the classroom with M.P. to take him down to the counselor's office.

26. SRO Tope also claims he saw M.P. take his jacket off and start swinging it around. SRO Tope felt M.P. was doing this intentionally and so decided to aggressively seize M.P. by the shoulders and carried M.P. away to a separate room. This physical aggression by SRO Tope caused M.P. to escalate and struggle to protect himself.

27. SRO Tope was asked to remain outside the room while M.P.'s teachers calmed M.P. down by implementing de-escalation techniques set forth in M.P.'s behavior support plan. M.P.'s mother was called. Thereafter, M.P. calmed down, but had periods where he would escalate, and the teachers would again implement the prescribed de-escalation techniques.

28. Demonstrating their lack of training regarding emotional disabilities in general and M.P.'s disabilities in particular, SRO Tope and SRO Ponce burst into the room unannounced and uninvited and violently forced M.P. to the ground and forcibly placed M.P. in handcuffs behind his back. SRO Tope and SRO Ponce had no justifiable basis to so violently seize and assault M.P.

29. Both SRO Tope and SRO Ponce carried M.P., handcuffed, out of the room, down the hall and out of the school building, where they placed him in the back of their patrol car.

30. M.P. was, of course, frightened, confused, in a state of panic and and struggling as

5

best he could to protect himself.

31. An ambulance was called and M.P. was transported to the Poudre Valley Hospital where he was treated and released after four hours.

32. Despite SRO Tope's initial physical seizure of M.P. and the subsequent violent take down and handcuffing by SRO Tope and SRO Ponce, M.P. was charged with assaulting SRO Tope, obstructing the duties of SRO Tope and Ponce, and interfering with the education of school staff and students.

33. M.P. was physically injured and emotionally traumatized by the incidents described above and has not yet recovered. He demonstrates fear, distrust and anxiety when interacting with others. He was never able to go back to school for a full-day. In the Spring of 2021, M.P. had an emotional breakdown that required in-patient psychiatric hospitalization and subsequent placement in an out of state residential treatment facility where he is at presently.

34. Both the Poudre School District and the Chief of Police for the Timnath Police Department were responsible for effectively training the Defendant SROs but failed to do so.

35. Upon information and belief, the School District and the Timnath Police Department split the costs of the SRO's salaries and benefits, and both the Timnath Police Department and the School District paid for costs of SRO training. The SROs were agents of both the Timnath Police Department and the School District.

36. Upon information and belief, Poudre School District SROs from the Timnath Police Department receive little or no training on interacting with students with disabilities, how to approach such students, how to de-escalate such students, how to keep these students safe, or when to seek medical attention for such students.

37. Whatever training they do receive is ineffective and inadequate, and leaves SROs with clear gaps in their knowledge of how to interact with students with disabilities.

38. Upon information and belief, the SROs involved in this incident did not have appropriate training in interacting with students with disabilities.

39. Upon information and belief, the Poudre School District and the Timnath Police Department have a pattern and practice of their employees and agents mishandling situations involving students with disabilities - especially students with serious emotional disabilities - and have a pattern and practice of disproportionately putting children with disabilities into restraints, secluding them, and referring them to law enforcement.

40. The School District and the Police Chief were aware or should have been aware, based on their own statistical data and specific incidents, that their lack of training for school staff—including SROs—posed a risk that students' rights would be violated, and that further training regarding interacting with students with disabilities was needed to prevent or reduce that risk.

41. In addition, national and local news coverage of SRO interactions with children with disabilities made or should have made the School District and Police Chief aware of the risks that students' rights would be violated if they did not provide further training on handling students with disabilities.

42. National studies and statistics also made or should have made the School District and Police Chief aware of the risks that students' rights would be violated if they did not provide further training on handling students with disabilities.

43. A recent analysis of 2011-12 data by the U.S. Department of Education Office for Civil Rights revealed that although students with disabilities account for only 12% of public school

students, they comprise 75% of students subjected to physical restraint in schools.

44. In 2009, the U.S. Government Accountability Office ("GAO") published the results of a nationwide study documenting hundreds of uses of restraints in schools between 1990 and 2009, including 20 restraints that resulted in the death of a child. Nearly all of the incidents investigated by the GAO involved children with disabilities.

45. That same year, in testimony before the U.S. House of Representatives Education and Labor Committee, the GAO presented these findings and reported on the risks of injury and death associated with the restraint of children. The GAO explained that even in situations where a child does not sustain any physical injury as a result of restraint, he is often severely traumatized.

46. In January 2019, the U.S. Department of Education announced an initiative on the inappropriate use of restraint and seclusion, and in July 2019, its agencies provided a presentation to educational agencies about how the use of restraint and seclusion may result in unlawful discrimination against students with disabilities and on steps public schools must and can take to prevent the inappropriate use of restraint and seclusion on children with disabilities.

47. These national studies and presentations should have informed the School District and Sheriff that further training was necessary regarding putting children with disabilities in restraints and the risk of not providing this further training.

48. Despite their knowledge of the need for more effective training, and despite their knowledge of the risks of failing to meet that need, the School District and Police Chief failed to provide effective additional training to SROs on interacting with students with disabilities.

49. The School District and Police Chief's pattern and practice, and their lack of adequate and effective training of SROs, were the moving forces behind the injuries to M.P. and the violations

of his rights.

## FIRST CLAIM FOR RELIEF
### (Violations of the Americans with Disabilities Act- 42 U.S.C. § 12131)

50. Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

51. Title II of the ADA prohibits public entities from discrimination on the basis of a disability. 42 U.S.C. § 12131(1)(B)).

52. M.P. is a qualified individual with a disability under the ADA. He has serious emotional disabilities and ADHD, which substantially limit his major life activities by causing him to be triggered by physical aggression against him and causing him challenges in his ability to manage emotions.

53. Through the SROs, Defendants denied M.P. reasonable accommodations.

54. Because the SROs denied M.P. reasonable accommodations, the Police Chief and School District caused M.P. to suffer greater injury and indignity in those processes than others similarly situated.

55. The SROs knew that accommodations were necessary under School District and Timnath Police Department policies, but were indifferent to an obvious risk of not providing the accommodations.

56. The Police Chief and School District are liable for the actions of the SROs because they jointly employed the SROs and the SROs served as their agents.

57. The Police Chief and School District also denied M.P. the benefit of properly trained SROs in Bethke Elementary School who would be trained to appropriately interact with students with disabilities and reasonably accommodate those students.

58. The Police Chief and School District were on notice of the need for more or different training, but were deliberately indifferent to that need.

59. As a proximate result of the Police Chief's and School District's actions and inactions, M.P. suffered physically and emotionally, and continues to experience trauma, fear, distrust, and anxiety regarding others.

60. As a result of the Police Chief's and School District's violations of Title II of the ADA, M.P. is entitled to compensatory damages, and reasonable attorneys' fees and costs.

## SECOND CLAIM FOR RELIEF
**(Violations of the Rehabilitation Act- 29 U.S.C. § 794)**

61. Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

62. Section 504 of the RA forbids programs that receive federal financial assistance to discriminate against individuals with a disability solely because of their disability. 29 U.S.C. § 794(a).

63. The Timnath Police Department and the School District receive federal financial assistance.

64. M.P. is a qualified individual with a disability under the Rehabilitation Act.

65. Through the SROs, the Police Chief and School District denied M.P. reasonable accommodations.

66. Because the SROs denied M.P. reasonable accommodations, the Police Chief and School District caused M.P. to suffer greater injury and indignity in those processes than others similarly situated.

67. The SROs knew that accommodations were necessary under School District and

Timnath Police Department policies, but were indifferent to an obvious risk of not providing the accommodations.

68. The SROs discriminated against M.P. solely as a result of his disability.

69. The Police Chief and School District are liable for the actions of the SROs because they jointly employed the SROs and the SROs served as their agents.

70. As a proximate result of the Police Chief's and School District's actions and inactions, M.P. suffered physically and emotionally, and continues to experience trauma, fear, distrust, and anxiety regarding others.

71. As a result of the Police Chief's and School District's violations of Section 504 of the Rehabilitation Act, M.P. is entitled to compensatory damages, and reasonable attorneys' fees and costs.

## THIRD CLAIM FOR RELIEF
### (Violations of the Fourth Amendment Pursuant to 42 U.S.C. § 1983)

72. Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

73. The Fourth Amendment forbids unreasonable seizures, which include seizures carried out with excessive force.

74. SRO Tope and SRO Ponce used excessive force in seizing M.P., violating M.P.'s Fourth Amendment rights by physically seizing him and carrying by his shoulders to another room in the school building, violently forcing M.P. to the ground and handcuffing M.P., and then forcing him to remain handcuffed and restrained for an excessively lengthy period of time.

75. SRO Tope and SRO Ponce unreasonably and unconstitutionally seized M.P. and used

excessive force in light of the totality of the circumstances, including but not limited to:

    a.      That M.P. had not engaged in any criminal activity;

    b.      That M.P. posed no real physical threat to anyone;

    c.      That M.P. was not attempting to flee school grounds;

    d.      M.P.'s age, size, and disabilities;

    e.      The failure of the SROs to appropriately approach and handle a child of M.P.'s age, size, and with M.P.'s disabilities; and

    f.      The SROs' aggressive and threatening actions that prompted M.P. to re-escalate.

76. M.P.'s right to be free from unreasonable seizure and excessive force as described herein was clearly established at the time SRO Tope and SRO Ponce handcuffed him and kept him in handcuffs for an excessive amount of time.

77. The Timnath Police Department and School District, and their joint employees and agents, SRO Tope and SRO Ponce, often interact with students with disabilities and thus the circumstances constituted a usual and recurring situation.

78. The School District and Police Chief failed to adequately train and supervise SROs, despite foreseeable consequences of such failure, on appropriately interacting with children with disabilities. That deliberately indifferent failure to train was a proximate cause of the violations of M.P.'s Fourth Amendment rights.

79. As a proximate result of all Defendants' actions and inactions, M.P. suffered physically and emotionally, and continues to experience trauma, fear, distrust, and anxiety regarding others.

80. M.P. is entitled to compensatory damages, punitive damages from the individual

defendants, and reasonable attorneys' fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief as follows:

    (a)    Compensatory damages;

    (b)    Punitive damages from the SROs sued in their individual capacities;

    (c)    An award of reasonable attorney's fees and costs associated with this action on all claims allowed by law;

    (d)    Pre and post-judgment interest at the lawful rate;

    (e)    Any further relief that this Court deems just and proper in equity and at law.

## JURY DEMAND

Plaintiff requests a trial by jury in this matter.

Respectfully submitted on January 26, 2022,

**SPIES, POWERS & ROBINSON, P.C.**

*/s/ Jack D. Robinson*
_____
Jack D. Robinson, #22037
950 South Cherry Street, Suite 700
Denver, Colorado 80246
Telephone: (303) 830-7090
Facsimile: (303) 830-7089
Attorneys for Plaintiff